**Affirm and Opinion Filed October 30, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00504-CV**

**AARON KAUFMAN, Appellant**
**V.**
**AMERIHEALTH LABORATORY, LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-17516**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Browning

The trial court denied appellant Aaron Kaufman's special appearance. On appeal, he argues the trial court erred by denying the special appearance on any of the multiple theories asserted by appellee AmeriHealth Laboratory, LLC. We affirm the trial court's order.

**Background**

AmeriHealth is a clinical laboratory capable of performing complex testing, including but not limited to qualitative drug screens, genetic testing, and blood and molecular testing. AmeriHealth entered into a consulting agreement with Final Inch, LLC in which Final Inch agreed to provide consulting services regarding technology,

automation, and technical management. To carry out the services, Final Inch gained access to AmeriHealth's confidential and proprietary information. According to AmeriHealth's original petition, Kaufman is the CEO of Final Inch and "has continually been Final Inch's point person for performance of the Agreement, as well as Final Inch's signatory on the Agreement." Both Final Inch and Kaufman are Florida residents.

On November 1, 2019, AmeriHealth filed suit alleging tortious interference against Kaufman and breach of contract against Kaufman and Final Inch. It further sought a temporary restraining order, requested a hearing on a temporary injunction, and requested leave to conduct expedited discovery.

The court held a hearing the same day. It is undisputed the beginning of the hearing was not transcribed. However, at the subsequent special appearance hearing, AmeriHealth reminded the trial court of Kaufman's actions during the TRO hearing. AmeriHealth emphasized that Kaufman's counsel appeared without limiting his appearance and actively made arguments on Kaufman's behalf, which included arguing he was not a signatory to the consulting agreement. AmeriHealth reminded the court that the parties retired to the jury room, at the court's suggestion, to work out the expedited discovery requests. After their discussions, they proceeded on the

record.[1]  The second half of the hearing in our appellate record is titled, "Rule 11 Agreement Proceeding."

At the beginning of that hearing, the trial court asked, "Y'all have an agreement regarding discovery?"  AmeriHealth's attorney answered, "We do.  After - - discovery and extending the TRO."  AmeriHealth further stated that the court had already signed and entered a TRO setting the TI hearing and that "[t]he parties have agreed to extend the TRO until the completion of a TI hearing."  AmeriHealth's attorney then read into the record the parties' agreement regarding certain discovery issues and their agreement to mediate the case before the TI hearing.  Counsel noted, "[W]e are requesting that - - once I confirm this agreement with [Kaufman's attorney], that the Court order us to comply with our Rule 11 agreement that we've announced on the record."  He continued, "Did I get our entire agreement or did I miss something?"  Kaufman's attorney added one additional discovery request and stated, "But everything else that he said is agreed."  The court signed the temporary restraining order, which included some modifications based on Kaufman's arguments, on November 1, 2019.

Kaufman filed his special appearance on November 8, 2019, alleging Texas did not have general or specific jurisdiction over him.  He acknowledged he was the

---

[1] During the special appearance hearing, Kaufman's counsel did not dispute these recitation of events because she was not the attorney at that time.  She simply acknowledged "there is no transcript before this Court as to what occurred at the beginning of the hearing.  Mr. Dial's a good lawyer, he's at Greenberg Traurig.  And he thought it wasn't waived because every single thing he did thereafter said 'subject to' - - every written record we have, 'subject to and without waiving' the special appearance."

CEO of Final Inch. He lived in Florida and met with AmeriHealth representatives in Florida several times before entering into the consulting agreement. He denied ever traveling to Texas and asserted that all contract negotiations occurred in Florida. He alleged he did not individually sign the contract, and all of the services Final Inch performed under the contract occurred in Florida. He denied owning any real property in Texas and claimed he visited the State a few times to see relatives and to conduct one business meeting on behalf of a company unrelated to the facts of the present case. He likewise argued AmeriHealth failed to explain how his alleged use of AmeriHealth's information related to Texas.

The trial court signed a temporary injunction on November 22, 2019. Subsequently, AmeriHealth filed its first amended petition alleging alter ego and piercing the corporate veil because "Final Inch, LLC is organized and operated as a conduit of Aaron Kaufman." The trial court held a hearing on the special appearance on April 6, 2020. AmeriHealth argued that based on Kaufman's previous actions, he had generally appeared. Counsel presented five different actions by Kaufman's attorney that he believed supported the general appearance: (1) announcing he was appearing on behalf of Kaufman at the TRO hearing without limiting his appearance to a special appearance; (2) actively participating in the TRO hearing on behalf of Kaufman; (3) asking for expedited discovery and obtaining such relief; (4) asking the trial court to order all parties to comply with the agreed discovery order; and (5) asking the trial court to extend the TRO. Counsel spent little time elaborating on the

–4–

alter ego theory, and the court did not have questions on that theory challenging jurisdiction.

Kaufman's attorney argued his participation in discovery did not waive his special appearance. The trial court asked, "What authority do you have regarding the effect of the TRO with attorney participation and the Rule 11? . . . I think that's the operative facts, you know." Counsel could not definitively answer and requested to supplement, which the court agreed because "that's what I want to see now."

The parties filed supplemental letter briefs. Kaufman argued that participating in the TRO hearing and agreeing to an extension did not waive his special appearance. Further, he contended he did not ask the trial court to order all parties to comply with the rule 11 agreement; rather, AmeriHealth misconstrued the proceedings. AmeriHealth filed its letter reurging its five theories presented during the hearing and distinguishing case law relied on by Kaufman.

After considering "the pleadings on file, arguments of counsel, and the actions taken by Aaron Kaufman prior to this hearing," the trial court signed an order denying Kaufman's special appearance "based on all of the reasons advanced" by AmeriHealth. Kaufman requested findings of fact and conclusions of law, but the trial court did not enter any. This appeal followed.

### Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.

2002). The trial court's decision to grant or deny a special appearance is subject to de novo review on appeal, but if a factual dispute exists, an appellate court is called upon to review the trial court's resolution of the factual dispute as well. *Id.* at 806; *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If the trial court does not issue findings of fact, as in this case, a reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *Am. Type Culture*, 83 S.W.3d at 806. Further, because the trial court did not specify under what ground it was exercising its authority to deny the special appearance, we may affirm the judgment under any applicable legal theory. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *see also Baxter & Assocs., L.L.C., v. D&D Elevators, Inc.*, No. 05-16-00330-CV, 2017 WL 604043, at *5 (Tex. App.—Dallas Feb. 15, 2017, no pet.) (mem. op.) ("In the absence of findings of fact and conclusions of law, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence.").

## Waiver of Special Appearance

In the trial court and on appeal, AmeriHealth argued Kaufman entered a general appearance thereby waiving his special appearance complaint. Because these issues must be resolved before considering the merits of the special appearance, we address them first.

A special appearance permits a nonresident defendant to object to personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a. However, a nonresident defendant may be subject to personal jurisdiction in Texas if the defendant enters a general appearance. *Boyd v. Kobierowski*, 283 S.W.3d 19, 21 (Tex. App.—San Antonio 2009, no pet.). A general appearance entered before a special appearance waives the special appearance. *Exito Elec. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004). In *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998), the supreme court provided guidance as to what constitutes a general appearance: a party (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative relief from the court. "The test for a general appearance is whether a party requests affirmative relief inconsistent with an assertion that the trial court lacks personal jurisdiction." *Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at *5 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.).

We begin by considering whether Kaufman generally appeared by participating in the TRO hearing. Both parties cite case law supporting their position; therefore, we address each as it relates to the facts of this case.

Kaufman argues that making legal arguments at the TRO hearing did not waive his special appearance because appearing in an ancillary matter prior to the main suit does not constitute a general appearance in the main suit. *See Alliantgroup, L.P. v. Feingold*, No. H-09-0479, 2009 WL 1109093, *5–6 (S.D. Tex. Apr. 24,

–7–

2009); *In re M.G.M.*, 163 S.W.3d 191, 200–01 (Tex. App.—Beaumont 2005, no pet.); *Valsangiacomo v. Americana Juice Imp., Inc.*, 35 S.W.3d 201, n.3 (Tex. App.—Corpus Christi 2000, no pet.); *Turner v. Turner*, No. 14-98-00510-CV, 1999 WL 33659, at *3 (Tex. App.—Houston [14th Dist.] Jan. 28, 1999, no pet.) (not designated for publication); *Perkola v. Koelling & Assocs., Inc.*, 601 S.W.2d 110, 111–12 (Tex. Civ. App.—Dallas 1980, no writ).

In *Perkola*, a case from our Court, we considered the denial of a plea of privilege and whether Perkola waived his plea of privilege by appearing at a temporary injunction hearing without having been served with process.[2] *Perkola*, 601 S.W.2d at 111. In that case, we recognized that a party waives a plea of privilege "if he invokes the power of the court in a manner which negatives a continuing intent to insist upon the plea." *Id*. Without analysis, we held Perkola "did not waive his plea by contesting the interlocutory temporary injunction. Perkola's appearance at this hearing on an ancillary matter was not an appearance in the main case." *Id*. at 112.

Kaufman argues *Perkola* is "instructive" because like Perkola, he appeared and contested the temporary restraining order, which was nothing more than participation in an ancillary matter. A closer review of the case, however, does not support Kaufman's characterization of our holding.

---

[2] *Perkola* is not a special appearance case and does not discuss rule 120a.

Importantly, unlike Kaufman, Perkola filed his plea of privilege first before taking any other action. *Id*. at 111 (noting order of pleadings filed). Here, Kaufman did not file his special appearance until after the trial court signed the TRO. Further, Kaufman's focus on Perkola "contesting" the temporary injunction as the lynchpin to our holding is misplaced and an overly broad reading of the case. The opinion is silent as to any actions that Perkola took, other than *appearing*, to contest the plea of privilege. *Id*. at 111 (both sides framing argument as whether waiver occurred based on voluntary appearance at temporary injunction hearing). We did not conclude, as Kaufman suggests, that a party who "appeared and contested" an ancillary matter prior to the main suit did not generally appear in the main case. Rather, Perkola contested the ancillary proceeding by appearing. Thus, *Perkola* is consistent with the general principle that simply appearing for an ancillary proceeding, such as a TRO hearing, is not a general appearance under rule 120a. *See, e.g., Carone v. Retamco Operating, Inc*., 138 S.W.3d 1, 8 (Tex. App.—San Antonio 2004, pet. denied) ("[P]arty who is a silent figurehead in the courtroom, observing the proceeding without participating" has not generally appeared.); *Bradford v. Bradford*, 971 S.W.2d 595, 598 (Tex. App.—Dallas 1998, no pet.) (same). However, those are not the facts before us.

Rather, Kaufman voluntarily appeared through counsel at the TRO hearing, succeeded in modifying the TRO based on counsel's arguments, and argued he was not a signatory to the consulting agreement thereby challenging AmeriHealth's

breach of contract claim. By stepping outside the role of observer or silent figurehead and participating in the hearing, counsel's actions were inconsistent with the assertion that the trial court lacked jurisdiction over Kaufman. *See, e.g., Beistel v. Allen*, No. 01-06-00246-CV, 2007 WL 1559840, at *3 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (mem. op.) ("While Texas courts have held that a party who merely observes a proceeding without participating does not make a general appearance, Beistel's counsel participated when she objected to the admission of Allen's spreadsheet."). Instead, counsel not only actively participated in the hearing but also sought and received affirmative relief from the trial court. *See Dawson-Austin*, 968 S.W.2d at 322.

We are likewise unpersuaded by the other cases Kaufman relies on. *Valsangiacomo* cited *Perkola*, in part, for the proposition that appearing and participating in an injunction hearing did not constitute a general appearance in an ancillary matter. *Valsangiacomo*, 35 S.W.3d at 204 n.3. However, in that case "counsel for [defendant] appeared at and participated in the temporary injunction *subject to* the special appearance." *Id*. (emphasis added). Further, the opinion is silent as to the extent of counsel's participation in the hearing.

In *Turner*, the defendant appeared at a TRO hearing prior to filing a special appearance. *Turner*, 1999 WL 33659, at *1–2. Counsel explained the defendant's position and presented argument in opposition to the TRO. *Id*. at *3. On appeal, the court recognized counsel was more than a "mere bystander at the hearing," but

–10–

because the TRO hearing was an ancillary matter, it concluded the defendant did not generally appear. *Id.* Significantly, unlike counsel in *Turner*, Kaufman's attorney sought and obtained affirmative relief from the trial court because of his participation in the TRO hearing. *See, e.g., Silbaugh v. Ramirez*, 126 S.W.3d 88, 93 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting a party must not seek affirmative relief on any question other than that of the trial court's jurisdiction before the disposition of the special appearance). Further, this case has no precedential value. *See* TEX. R. APP. P. 47.7(b) ("Opinions and memorandum opinions designated "do not publish" under these rules by the courts of appeals prior to January 1, 2003 have no precedential value."); *see also Babiy v. Kelley*, No. 05-17-01122-CV, 2019 WL 1198392, at *5 (Tex. App.—Dallas Mar. 14, 2019, no pet.) (mem. op.).

Lastly, Kaufman relies on a federal district court case, which is not binding authority. *Alliantgroup, L.P.*, 2009 WL 1109093, *5–6; *see also Roe v. Ladymon*, 318 S.W.3d 502, 510 n.5 (Tex. App.—Dallas 2010, no pet.) (noting binding authority on appellate courts). Regardless, the defendant in that case raised the lack of personal jurisdiction in his first responsive pleading before filing a special appearance, and the opinion does not indicate defense counsel's level of participation in the pre-special appearance hearings. *Alliantgroup, L.P.*, 2009 WL 1109093, *5–6.

The missing piece from each of these cases is the extent of counsel's participation in the hearing and counsel seeking and receiving affirmative relief from the trial court. The Austin Court of Appeals has recognized this distinction.

In *Schoendienst v. Haug*, 399 S.W.3d 313, 314 (Tex. App.—Austin 2013, no pet.), the court considered whether Haug violated Schoendienst's due process rights by taking a default judgment without prior notice after she appeared in the action. Although the case did not involve a special appearance, the Austin court conducted a thorough analysis of 120a cases to determine whether Haug generally appeared through her actions thereby recognizing the trial court's jurisdiction to decide broader questions in the case. *Id.* at 317. The court concluded that by agreeing without qualification to a temporary injunction, she subjected herself to a court order that restricted her personal freedom and ability to deal with her property and finances in anticipation of a trial on the merits. *Id.* at 320–21. The court acknowledged what had been suggested by some courts to be "a categorical rule that appearing in matters 'ancillary and prior to the main suit,' including agreeing to temporary injunctive relief, does not constitute a general appearance that waives a special appearance." *Id.* at 321 n.8 (discussing two cases relying on *Turner* and *Perkola*). As we explained above and the Austin court likewise concluded "a close examination of the authorities cited to support that proposition reveals it to be an overbroad oversimplification." *Id.*

Kaufman has not challenged the facts from the beginning of the TRO hearing that were not recorded. In fact, during the special appearance hearing, AmeriHealth's counsel reminded the trial court of the procedural background without any challenge from Kaufman:

> [Y]our Honor, respectfully, while there wasn't a record of the first part of your hearing, I think the Court recalls what Mr. Dial did, appearing, making argument, the TRO speaks for itself, more importantly, there is a record of the second part of your hearing.
>
> THE COURT: Yeah.

Accordingly, Kaufman's conduct during the beginning of the TRO hearing, considered in the context of the present record, amounted to a general appearance.

The reporter's record of the second half of the TRO hearing further supports the conclusion Kaufman generally appeared by seeking affirmative relief from the trial court. Kaufman, however, argues he did not generally appear by requesting expedited, pre-injunction discovery, and by agreeing to the rule 11 agreement because he did not invoke the jurisdiction of the court.

We agree engaging in discovery is not enough in and of itself to waive a special appearance. *See Brady*, 2020 WL 2029245, at *6. We likewise recognize that under some circumstances, a rule 11 agreement will not constitute a general appearance. *See Crystalix Grp. Int'l, Inc. v. Vitro Laser Grp. USA, Inc*., 127 S.W.3d 425, 428 n.2 (Tex. App.—Dallas 2004, pet. denied) (concluding rule 11 agreements did not constitute a general appearance but "declin[ed] to establish a bright-line rule

affecting all rule 11 agreements" and instead "look[ed] to the facts of the case before us").

In *Crystalix*, we concluded two rule 11 agreements, one extending a TRO and another agreeing not to interfere or seize certain property, did not amount to a general appearance because the agreements neither changed the status of any action with the trial court nor requested or invoked any action from the trial court. *Id*. at 428. Here, despite Kaufman's arguments to the contrary, he agreed to the terms read into the record by AmeriHealth, but more importantly, he agreed to "everything else that [AmeriHealth] said," which included the trial court ordering compliance with the rule 11 agreement. By suggesting a contrary conclusion because AmeriHealth's attorney read the agreement into the record, Kaufman underplays his own actions during the hearing. AmeriHealth repeatedly said, "the parties have agreed," and "we have agreed" as terms were read into the record. Kaufman never objected or attempted to clarify that he did not agree with the recitations. Further, Kaufman's attorney made one clarification and said, "But everything else he said is agreed." Thus, Kaufman agreed to the trial court confirming the rule 11 agreement and ordering the parties to comply with it. As such, he invoked action from the trial court inconsistent with the assertion that the trial court lacked jurisdiction over him. *See Dawson-Austin*, 968 S.W.2d at 322 (seeking affirmative relief from trial court will constitute a general appearance). *But see Exchequer Fin. Grp., Inc. v. Stratum, Dev., Inc.*, 239 S.W.3d 899, 905 (Tex. App.—Dallas 2007, no pet.) (no general

–14–

appearance when "no evidence on our record showing appellee requested any affirmative relief from the trial court").

In reaching this conclusion, we reject Kaufman's contention that language in the temporary injunction order indicates AmeriHealth and the trial court understood he had not generally appeared.[3] By the time the trial court signed the order, Kaufman had already generally appeared. Any attempt to belatedly preserve his special appearance by inserting language into the temporary injunction order did not eliminate or cure the effects of his prior actions during the TRO hearing, which were inconsistent with the assertion that the trial court lacked jurisdiction over him. *See, e.g., Beistel*, 2007 WL 1559840, at *3 (counsel's participation in hearing was inconsistent with special appearance and attempt to preserve special appearance did not cure effect of actions at previous hearing). Moreover, inserting such language, which is routinely included in pleadings filed after a special appearance, did nothing more than acknowledge the pending special appearance.

Given Kaufman's actions, considered in the context of the present record, we conclude Kaufman generally appeared. As such, his general appearance waived his

---

[3] The order stated, in part, "The parties have agreed to the terms of this Order of Temporary Injunction as evidenced by their approval and of the approval of their attorneys below, without waiver of Defendant Aaron Kaufman's Special Appearance." In a footnote, the court elaborated,

> Defendants expressly condition the submission of this Agreed Temporary Injunction on the condition that neither the filing nor the Court's entry of this Agreed Temporary Injunction waives Aaron Kaufman's Special Appearance. Plaintiff agrees not to use the parties' agreement of the entry of the Agreed Temporary Injunction as evidence of waiver of Aaron Kaufman's Special Appearance or to argue that either constitutes a waiver of Aaron Kaufman's Special Appearance.

personal jurisdiction complaint, and we need not address whether Kaufman negated personal jurisdiction based on AmeriHealth's alter ego theory. *See Crystalix*, 127 S.W.3d at 427 ("An appearance that does not comply with rule 120a is a general appearance and waives the party's personal jurisdiction complaint."); *see also Whorton*, 742 S.W.2d at 278 (affirming denial of special appearance under any applicable legal theory when trial court does not specify under what ground it exercised authority); TEX. R. APP. P. 47.1.

We overrule Kaufman's arguments challenging the trial court's denial of his special appearance.

### Conclusion

We affirm the trial court's order denying Kaufman's special appearance.

200504f.p05

/John G. Browning/
JOHN G. BROWNING
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AARON KAUFMAN, Appellant

No. 05-20-00504-CV     V.

AMERIHEALTH LABORATORY, LLC, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-17516. Opinion delivered by Justice Browning. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AMERIHEALTH LABORATORY, LLC recover its costs of this appeal from appellant AARON KAUFMAN.

Judgment entered this 30th day of October, 2020.